UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL CLEMINS, individually and
on behalf of all others similarly situated,

Case No.

Plaintiff,

v.

**JURY TRIAL DEMANDED**

JPMORGAN CHASE & CO. and
CHASE BANK USA, N.A.

Defendants.

**CLASS ACTION COMPLAINT**

Plaintiff, Michael Clemins individually and on behalf of all others similarly

situated (the "Class"), brings this class action against Defendants JPMorgan Chase & Co.

and Chase Bank USA, N.A. (collectively referred to as "CHASE" or the "Company").

Plaintiff seeks certification of this action as a class action. Plaintiff, by and through his

attorneys, submits this Class Action Complaint (the "Complaint") against the defendants

named herein and alleges as follows:

**NATURE OF THE ACTION**

1.      This proposed class action stems from the illicit activities undertaken by

CHASE while marketing and selling products associated with its credit cards known as

"Chase Payment Protector," "Payment Protection," and other monikers that all offer

similar coverage (hereinafter collectively referred to as "Payment Protection").

2.    Although CHASE's Payment Protection is indistinguishable from a contract of credit insurance, Payment Protection is not marketed or sold as insurance. CHASE does not register Payment Protection with the Wisconsin Department of Insurance, thereby avoiding state regulation.

3.    CHASE violated the law not only through the sale of a product that should be – but is not, due to its unlawful activities – subject to insurance regulations, but also by the deceptive and misleading manner in which it offers the Payment Protection plan to consumers, and the manner in which it administers claims for benefits by consumers.

4.    CHASE markets Payment Protection through direct mail and telemarketing. It represents Payment Protection as a service that pays the required minimum monthly payment due on the subscriber's credit card account and excuses the subscriber from paying the monthly interest charge and the Payment Protection plan fee for a limited period of time, preventing the account from becoming delinquent. CHASE claims that this service "protects real people like you."

5.    Despite its simple explanation for marketing purposes, CHASE's Payment Protection plan is a dense maze of limitations, exclusions and restrictions, making it impossible for consumers to determine what Payment Protection covers and whether it is a sound financial choice.

6.    CHASE makes no effort to determine whether a cardholder is eligible for Payment Protection benefits at the time of sale. As a consequence, the Company bills thousands of retired persons (many of whom are senior citizens), along with the unemployed, those employed by family members, and part-time or seasonal Wisconsin

residents, as well as disabled individuals, for Payment Protection coverage, even though their employment or health status prevents them from receiving benefits under the plan.

7. Further, CHASE makes no effort to determine whether subscribers become ineligible for Payment Protection benefits after they are enrolled in the plan. Accordingly, when subscribers' employment or health status changes, they will continue to pay for the product even though they may no longer be eligible for benefits under the plan.

8. CHASE requires customers to enroll for Payment Protection coverage *before* it provides subscribers with the terms and conditions of the plan. After a subscriber is enrolled, the person may then affirmatively cancel the plan through what CHASE markets as a "30-day satisfaction guarantee." By not adequately disclosing the terms of Payment Protection coverage to consumers *before* they buy the product, CHASE is violating – among other things – the Wisconsin Deceptive Trade Practices Act §100.18.

9. Given the confusing way the written materials present the terms and conditions of Payment Protection, it would be extremely difficult for a subscriber to decipher those provisions.

10. CHASE has established its "customer service" support in such a way that subscribers cannot easily cancel the plan or receive answers to benefit questions. It has established its "claim filing" system in a way to make it difficult for subscribers to file claims or receive benefits for filed claims.

11. CHASE does not refund Payment Protection premiums after it has denied subscribers' claims for Payment Protection benefits, nor does it address subscribers'

continued obligations to pay the monthly fee for Payment Protection after a claim has been denied.

12.     Payment Protection, is so confusing as to when coverage is triggered, so restricted in terms of the benefits it provides to subscribers, and processing claims is made so difficult by CHASE, that the product is essentially worthless.

13.     CHASE knows that for those cardholders who choose to pay for Payment Protection, few will ever receive benefits under the plan and even for those who do receive benefits, the amounts paid in "premiums" will usually exceed any benefits paid out.

14.     As a result of its misleading and deceptive marketing practices in connection with sales of Payment Protection, CHASE has increased its profits by many millions of dollars, all thanks to a product which provides virtually no benefits to thousands of Wisconsin residents who are nevertheless charged for the product month in and month out.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), in that:

> (a)     This is a class action involving 100 or more class members,
>
> (b)     Plaintiff, a citizen of the State of Wisconsin, is diverse in citizenship from Defendants JPMorgan Chase & Co. and Chase Bank USA, N.A., which are incorporated in Delaware and have principal places of business in New York.

16.     This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that:

(a) The class, which includes an unknown number of persons but certainly more than 100, is so numerous that joinder of all members is impractical;

(b) There are substantial questions of law and fact common to the class including those set forth in greater particularity in Paragraph 68 herein;

(c) This case is properly maintainable as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

      i.      questions of law and fact enumerated below, which are all common to the class, predominate over any questions of law or fact affecting only individual members of the class;

      ii.     a class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

      iii.    the relief sought in this class action will effectively and efficiently provide relief to all members of the class; and

      iv.    there are no unusual difficulties foreseen in the management of this class action.

17.     The Court has personal jurisdiction over CHASE, which has at least minimum contacts with the State of Wisconsin because it has conducted business there and has availed itself of Wisconsin's markets through its promotion, sales, and marketing efforts.

18.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

19.     This Court is a proper venue in which to bring this action, pursuant to 28 U.S.C. § 1391, inasmuch as a substantial part of the events or omissions giving rise to the claims occurred within the district in which this Court sits.

## PARTIES

20.     Plaintiff Michael Clemins("Plaintiff") resides in this district in Milwaukee County.  Since 2001, Plaintiff has had a Chase Mastercard credit card in his name issued from CHASE bearing Payment Protection features.

21.     Upon information and belief, Defendant JPMorgan Chase & Co. is a publicly traded holding company incorporated in Delaware with a principal place of business in New York, New York. Service can be made upon its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

22.     Upon information and belief, Defendant Chase Bank USA, N.A. operates a nationally chartered bank. Chase Bank USA, N.A. is incorporated in Delaware with a principal place of business in New York, New York. Service can be made upon its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## FACTUAL ALLEGATIONS

23.     Payment Protection is self-described by CHASE as a non-insurance product. CHASE has not registered or identified Payment Protection as an insurance product with the Wisconsin Department of Insurance or other appropriate authorities.

24.     However, upon information and belief, prior to developing and marketing Payment Protection, CHASE did sell credit insurance products, which it registered with appropriate state authorities. CHASE's credit insurance products offered substantially the same type of coverage as what is offered today as Payment Protection.

25.     Even though CHASE's previously offered credit insurance products were nearly indistinguishable from what is now offered as Payment Protection, CHASE does not designate Payment Protection an "insurance product" so it can avoid state regulation and charge higher fees for the product.

26.     Upon information and belief, CHASE offers Payment Protection to all its credit card customers, but aggressively markets this product to vulnerable Wisconsin consumers who fall into the subprime credit category, or customers who have low credit limits because of impaired credit ratings.

27.     CHASE markets Payment Protection as a service that will safeguard subscribers' credit card accounts by crediting the required minimum monthly credit card payments due in certain highly restricted circumstances, or permanently canceling accounts in other circumstances. In such circumstances, the subscribers are also not required to pay the monthly interest charges or the Payment Protection plan fee for the month in question.

28.     CHASE also markets other "add-on" benefits associated with its Payment Protector plan, like telephone and online resources to manage personal/professional matters and daily credit monitoring, for an added cost.

29.     CHASE sells Payment Protection to consumers through a number of different channels, including direct mail marketing, in which it may ask that the consumer "check the box" to initiate the plan, through telemarketing, where the consumer may be asked to press a button on the telephone keypad to approve initiation of the plan, or through unilaterally imposing the Payment Protection feature on a consumer's credit card.

30.     CHASE shifts its burden and duty of full disclosure prior to the sale to the customer and requires subscribers to decipher the terms of the product <u>after it has already been purchased</u> and to then take action to cancel it. It characterizes this sales scheme as a "30-day satisfaction guarantee" such that "[i]f you are not completely satisfied, just cancel in the first 30 days and get a refund of any fee billed."[1] In fact, the obligation is affirmative: "[u]nless you cancel, this fee will be charged to your enrolled credit card each month."[2]

31.     Even if the subscriber is later provided with written materials from CHASE, it is virtually impossible for the subscriber to determine all of the exclusions and limitations of Payment Protection, or the value of the product, based on what is provided.

32.     Upon information and belief, CHASE imposed charges for "Payment Protection" upon Wisconsin consumers even though individual consumers did not request the product or clearly assent to pay for the product in writing after getting the opportunity to review its governing terms and conditions.

33.     In some instances, Payment Protection has been unilaterally imposed upon consumers. In other instances, no written materials explaining the terms and conditions were ever provided to subscribers. If Payment Protection is imposed and no written materials are provided, the only way subscribers could ever know they have been enrolled in Payment Protection and are being charged for this product is from noticing a line item fee listed on their monthly credit card statements.

34.     The terms of CHASE's Payment Protection program are varied, complicated and always changing. However, all of the various plans provide for some

form of benefit upon the occurrence of "covered events," including *Death, Disability* and *Income Loss*.

35.     Payment Protection also provides payment for a limited period of time upon the occurrence of a *Life Event*, defined strictly by CHASE to include including marriage, birth or adoption of a child, move of primary residence, divorce, retirement, natural disaster and death of a Covered Person.

36.     The restrictions, limitations and exclusions associated with these Payment Protection covered events and the proofs required to establish them are expansive and constantly evolving.

37.     The telephone marketing scripts and the written materials provided by CHASE are incomplete, indecipherable, misleading and obfuscatory.

38.     An example of the misleading and obfuscatory language is CHASE's failure to disclose that Payment Protection is actually akin to an insurance product. Despite this fact, CHASE's marketing materials carefully avoid any use of the word "insurance." The materials refer to "claims," which indicates that CHASE internally regards this as an insurance product. The fees paid for Payment Protection by consumers are actually premiums.

39.     According to the written materials which are only provided <u>after</u> subscribers have already been enrolled in the plan, the following restrictions on Payment Protection are imposed. However, because these restrictions are in small print and in incomplete, indecipherable, misleading and obfuscatory language, they are not readily comprehensible to subscribers:

        (a)     Payment Protection does not apply to persons employed by family members;

(b)     Payment Protection does not apply to persons employed part time or seasonally;

(c)     Payment Protection does not apply to retired persons;

(d)     Payment Protection does not apply for the first 30 days of unemployment or disability;

(e)     Payment Protection does not apply to persons who have not held their job for at least 90 days;

(f)     Payment Protection does not apply if you qualify for state or federal unemployment benefits;

(g)     Payment Protection does not apply unless you remain "registered at a recognized employment agency";

(h)     Payment Protection coverage is limited to 12 months;

(i)     Payment Protection coverage is limited to one benefit approval per calendar year; and

(j)     Payment Protection requires proof of continuous physician's care for the entire period of benefits.

40.     Upon information and belief, CHASE is in possession of information, such as date of birth and name of last employer, which would assist CHASE in knowing whether a particular cardholder is eligible for Payment Protection.

41.     However, CHASE makes no reasonable efforts and undertakes no investigation, including review of information in its possession regarding the cardholder, to determine if Payment Protection coverage would apply to the cardholder. Accordingly, CHASE engages in marketing to enroll individuals in Payment Protection even when it has information in its possession indicating that the product may have limited or no value to the consumer.

42.     For instance, Wisconsin retired persons, many of whom are senior citizens, are charged for this product even though they are categorically excluded from

receiving most or all of the benefits under the plan. In fact, CHASE does not even ask customers whether they are retired.

43.     Similarly, the benefits offered to persons employed by family members are limited, but CHASE nevertheless fails to affirmatively inform such persons of the limitations in benefits when they are enrolled. In fact, CHASE does not even ask customers whether they are employed by family members.

44.     Further, part-time or seasonal workers are also limited or categorically excluded from receiving benefits. To qualify for benefits, one needs to work at least 30 hours a week in employment considered to be permanent. However, CHASE makes no effort to investigate whether any of the Wisconsin consumers who pay for Payment Protection are part-time or seasonal. These terms are not adequately communicated or defined in any CHASE materials.

45.     Finally, benefits are unavailable or limited for disabled persons, but CHASE nevertheless fails to affirmatively inform these individuals of the limitations on benefits when they are enrolled. In fact, CHASE does not even ask customers whether they are disabled.

46.     The cost of Payment Protection is a monthly charge of $0.89 per $100 of a subscriber's month-ending credit card balance. "Add-on benefits" cost the subscriber an extra $3.29 per month.

47.     For example, if a CHASE credit card customer has a balance on a covered account of $10,000, as a Payment Protection subscriber, the customer owes CHASE $92.29 that month just for Payment Protection coverage.

48.     Payment Protection also provides the added benefit to CHASE of lowering available credit to its subscribers through the imposition of this additional fee. Further, the imposition of the fee creates a cycle of profitability for CHASE, in that the fee itself increases subscribers' monthly credit balances, which in turn increases Payment Protection fees in upcoming months.

49.     "Customer service" is available for CHASE's Payment Protection subscribers. To access customer service, subscribers can call a 1-800 number or send mail to a P.O. Box in Louisville, Kentucky.

50.     Upon information and belief, CHASE's Payment Protection call center is based in the Philippines. Employees are purportedly trained to assist subscribers with all questions, including inquiries concerning canceling memberships, plan benefits and filing claims.

51.     CHASE has established its customer service system in such a way that it is difficult for subscribers to cancel Payment Protection, to get detailed information about claim benefits or restrictions, or to file claims.

52.     For example, upon information and belief, employees at CHASE's Philippines call center are given authority to deny claims immediately over the phone, but do not have authority to approve claimants to receive benefits in the same manner.

53.     Further, when claims for Payment Protection benefits are denied, CHASE has not implemented a process through which subscribers' Payment Protection premiums are refunded, even if the subscribers are deemed to be *per se* ineligible for Payment Protection benefits. In fact, if subscribers are denied Payment Protection benefits, CHASE neither affirmatively removes subscribers from Payment Protection enrollment

going forward, nor is it CHASE's policy to inform subscribers of their continued obligations pay for Payment Protection even though they have been deemed to be ineligible for benefits.

54.     Chase is one of the largest issuers of credit cards in the world. Payment Protection is a profit center for CHASE and serves the Company's interest in generating fee income, to the detriment of its most vulnerable customers.

55.     Although heralded as coverage designed for a subscriber's "protection" and "peace of mind," the Payment Protection device is designed to prey on the financially insecure and is virtually worthless because of the numerous restrictions that are imposed, because of the exclusions of benefits, and because of the administrative and bureaucratic hurdles that are placed in the way of Wisconsin subscribers who attempt to secure payments from CHASE under Payment Protection coverage.

## FACTUAL ALLEGATIONS AS TO PLAINTIFF

56.     Plaintiff is an Wisconsin resident.

57.     In 2001, Plaintiff enrolled for and became a CHASE credit card holder. In that same year, Plaintiff became enrolled in Payment Protection through CHASE's Payment Protector Plan.

58.     While enrolled in Payment Protection, Mr. Clemins was retired. However, no one from CHASE ever asked Plaintiff about him employment status before enrolling him in Payment Protection. Plaintiff remains retired today.

59.     Plaintiff continued to pay for Payment Protection for approximately nine years.

## CLASS ACTION ALLEGATIONS

60.     Plaintiff brings this action on his own behalf and on behalf of a class of all other persons similarly situated (the "Class"), pursuant to Rule 23 of the Federal Rules of Civil Procedure.

61.     Plaintiff brings this action as a class representative to recover damages and/or refunds from CHASE for consumer fraud as defined in the Wisconsin Deceptive Trade Practices Act §100.18 and for injunctive relief and declaratory judgment, and unjust enrichment.

62.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of the Federal Rules of Civil Procedure Rule 23(a) and (b).

63.     Plaintiff seeks certification of a class comprised of the following Wisconsin citizens and consumers:

> All residents of the State of Wisconsin who (1) were solicited by CHASE to purchase Payment Protection; and (2) paid for Payment Protection ("Payment Protection Subscribers") at all times the product was sold.

64.     Plaintiff seeks certification of the following subclass comprised of the following Wisconsin Citizens and consumers:

> All residents of the State of Wisconsin who were not eligible for full benefits, or whose eligibility for benefits were limited by express exclusions, including but not limited to those Payment Protection subscribers who were retired, self-employed or part-time or seasonal workers, or were disabled, either at the time that they were solicited for and made payments to CHASE for Payment Protection, or any time thereafter while continuing to pay for Payment Protection.

65.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

66.     Excluded from the Class are:

(a)     Defendants and any entities in which Defendants have a controlling interest;

(b)     Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of Defendants;

(c)     The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

(d)     Persons or entities with claims for personal injury, wrongful death and/or emotional distress;

(e)     All persons or entities that properly execute and timely file a request for exclusion from the Class;

(f)     Any attorneys representing the Plaintiff or the Class; and

(g)     All governmental entities.

67.     <u>Numerosity – Fed. R. Civ. P. 23(a)(1)</u>. The Class is comprised of over 100 people and possibly hundreds of thousands of individuals who were CHASE customers, the joinder of which in one action would be impracticable. The exact number or identification of the Class members is presently unknown. The identity of the Class members is ascertainable. In addition to rolls maintained by the Defendants and their agents, the Class members may be located and informed of the pendency of this action by a combination of electronic bulletins, e-mail, direct mail and public notice, or other means. The disposition of the claims of the proposed class members through this class action will benefit both the parties and the Court.

68.    Predominance of Common Questions – Fed. R. Civ. P. 23(a)(2), 23(b)(3).

There is a well-defined community of interest in the questions of law and fact involved

affecting members of the Class. The questions of law and fact common to the Class

predominate over questions affecting only individual Class members, and include, but are

not limited to, the following:

> (a)    Whether CHASE's sales, billing, and marketing scheme as alleged in this Complaint is deceptive, unlawful, and/or unfair in violation of Wisconsin law;
>
> (b)    Whether CHASE's common and uniform sales, billing, and marketing scheme related to Payment Protection insurance as alleged in this Complaint constitutes unfair or deceptive conduct within the meaning of the Wisconsin Deceptive Trade Practices Act.
>
> (c)    Whether the Plaintiff and the Class members are entitled to restitution of all amounts acquired by CHASE through its common and uniform scheme;
>
> (d)    Whether Plaintiff and the Class members are entitled to injunctive relief requiring the disgorgement of all fees wrongfully collected by CHASE;
>
> (e)    Whether Plaintiff and the Class members are entitled to prospective injunctive relief enjoining CHASE from continuing to engage in the deceptive, unlawful, and unfair common scheme as alleged in this Complaint; and
>
> (f)    Whether Plaintiff and the Class members are entitled to recover compensatory and punitive damages as a result of CHASE's wrongful scheme.

69.    Typicality – Fed. R. Civ. P. 23(a)(3). Plaintiff asserts claims that are

typical of the entire Class, having all been targeted by CHASE as consumers and who

were improperly assessed, and paid, charges for Payment Protection. Plaintiff and the

Class members have similarly suffered harm arising from CHASE's violations of the law

as alleged in this Complaint.

70. <u>Adequacy – Fed. R. Civ. P. 23(a)(4); 23(g)(1)</u>. Plaintiff is an adequate representative of the Class because he fits within the class definition and his interests do not conflict with the interests of the Members of the Class he seeks to represent. Plaintiff will prosecute this action vigorously for the benefit of the entire Class. Plaintiff is represented by experienced and able attorneys from coordinated law firms that will collectively and jointly serve as class counsel. Class counsel have litigated numerous class actions, and Plaintiff's counsel intend to prosecute this action vigorously for the benefit of the entire Class. Plaintiff and class counsel can and will fairly and adequately protect the interests of all of the Members of the Class.

71. <u>Superiority – Fed. R. Civ. P. 23(b)(3)</u>. The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Plaintiff and members of the Class have suffered irreparable harm as a result of CHASE's fraudulent, deceitful, unlawful, and unfair conduct. Because of the size of each individual Class members' claims, no Class members could afford to individually seek legal redress for the wrongs identified in this Complaint. Without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses, as CHASE continues to engage in the unlawful, unfair, and unconscionable conduct that is the subject of this Complaint, and CHASE would be permitted to retain the proceeds of its violations of law. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## COUNT ONE
## BREACH OF THE COVENANT OF GOOD FAITH
## AND FAIR DEALING

73.     Plaintiff restates and re-alleges the preceding paragraphs of the Complaint as though set forth at length herein.

74.     Upon information and belief, Plaintiff and CHASE contracted for Payment Protection benefits.

75.     Upon information and belief, the terms and conditions of this agreement are embodied in the Welcome Kit and other written materials in the possession of CHASE.

76.     In Wisconsin, a covenant of good faith and fair dealing is implied in every contract.

77.     All contracts, therefore, impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with discharging contractual performance and other duties according to the contract's terms, prohibits a party from taking any action or engaging in any conduct which would have the effect of destroying or injuring the other party's right to obtain the benefits prescribed by the terms of the contract. Put differently, parties to a contract are mutually obligated to exercise good faith and comply with the substance of their contract in addition to its form. A party breaches the covenant of good faith and fair dealing when it uses or manipulates contractual rights as a means to gain an unfair advantage beyond what the parties originally bargained for or reasonably expected.

78.     By making it exceedingly difficult for Class members to make Payment Protection claims, CHASE took action which had the effect of destroying or injuring

Class members' rights to obtain the Payment Protection benefits they bargained for by enrolling in Payment Protection. Such conduct constitutes an absence of good faith on the part of CHASE.

79.     CHASE has thus breached the covenant of good faith and fair dealing inherent in the Payment Protection agreement.

80.     Plaintiff and the Class have performed all, or substantially all, of the obligations imposed on them in the Payment Protection agreement.

81.     Plaintiff and members of the Class have sustained damages as a result of CHASE's breach of the covenant of good faith and fair dealing.

**COUNT TWO**
**VIOLATION OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT**

82.     Plaintiff restates and re-alleges the preceding paragraphs of the Complaint as if set forth at length herein.

83.     CHASE's conduct, as described in the preceding paragraphs of this Complaint, constitutes unfair or deceptive acts or practices in trade or commerce in violation of Wisconsin Deceptive Trade Practices Act, §100.18.

84.     CHASE's unfair or deceptive and thus, unlawful conduct consisted of at least the following:

(a)     CHASE unilaterally imposes Payment Protection upon its customers' credit card accounts, thereby failing to disclose to customers that Payment Protection is an optional plan and that they have the option to "opt out" of Payment Protection;

(b)     CHASE did not obtain affirmative consent from subscribers prior to enrolling them in Payment Protection;

(c)     CHASE does not provide the terms and conditions of Payment Protection to subscribers until after they have enrolled in the plan;

(d)      The written documents that CHASE does eventually provide to subscribers, referred to by CHASE as a Welcome Kit, does not provide subscribers with sufficient information to understand the terms and conditions of Payment Protection;

(e)      The Welcome Kit and related documents provided to customers are ineffective, ambiguous, deceptive, unfair, and misleading in that they do not require affirmative customer consent (like a signature) and do not unambiguously state that certain customers are *per se* ineligible to receive benefits, even though CHASE had the information and means of determining eligibility prior to enrolling these customers in Payment Protection;

(f)      CHASE does not alert customers that certain individuals are *per se* ineligible for Payment Protection benefits, including but not limited to retired persons, unemployed persons, persons employed by family members, persons employed on a part-time or seasonal basis and those that are disabled.

(g)      The amount charged in fees for Payment Protection is not rationally related to the amount of value Payment Protection provides to subscribers, nor is the value of Payment Protection computable or discernable by subscribers;

(h)      CHASE charges exorbitant fees for Payment Protection, much more than the value of the benefits offered or paid out to subscribers, and is able to do so because CHASE does not identify Payment Protection as an insurance product, which would require it to provide fees and claims-paid data to state authorities for review and regulation;

(i)      The formula CHASE uses to compute Payment Protection fees is misleading such that subscribers are unable to budget for this product or understand its overall cost in order to determine its value to subscribers; and

(j)      CHASE operates its customer service centers in such a way as to make it difficult for subscribers to cancel enrollment, obtain information about the terms and conditions of Payment Protection coverage, and file claims, in order for CHASE to maximize the number of Payment Protection subscribers and minimize the amount of benefits it pays to these subscribers; and

(k)      CHASE uses other means to make it excessively difficult for subscribers to file claims and obtain Payment Protection benefits, thus rendering worthless or virtually worthless the Payment

Protection program for which Class members are paying substantial fees to CHASE.

85.     CHASE's unlawful conduct as described herein caused injury to Plaintiff and Class members in the form of the fees they paid to CHASE for enrollment in CHASE's Payment Protection program, which was worthless or virtually worthless. Alternatively, Plaintiff and Class members paid fees for enrollment in CHASE's Payment Protection program that were far in excess of the value of enrollment in that program.

86.     The unfair or deceptive acts or practices of CHASE as alleged herein were willful or knowing violations of the Wisconsin Deceptive Trade Practices Act, §100.18

87.     Plaintiff and Class members have been injured by CHASE's unfair or deceptive acts or practices.

88.     Plaintiff and the Class are also entitled to injunctive and declaratory relief including, without limitation, orders declaring CHASE's practices as alleged herein to be unlawful, unfair, unconscionable and/or deceptive, and enjoining CHASE from undertaking any further unlawful, unfair, unconscionable, and/or deceptive acts or omissions.

89.     Plaintiff and the Class are also entitled to disgorgement and restitution of CHASE's ill-gotten gains in the form of unlawful profits obtained from the conduct described in detail herein.


**COUNT FOUR**
**INJUNCTIVE RELIEF PAYMENT PROTECTION RESTITUTION**

90.     Plaintiff restates and re-alleges the preceding paragraphs of this Complaint as if set forth at length herein.

91.     Plaintiff asks the Court to grant the remedy of restitution to himself and to

all members of the Class who made payments to CHASE for Payment Protection. The

Plaintiff asks the Court to grant the following relief:

(a)     a refund of all Payment Protection payments made to CHASE;

(b)     a refund to any consumers who were retired at the time they were
        sold Payment Protection by CHASE or at any time they paid for
        Payment Protection;

(c)     a refund to any consumers who were ineligible for benefits, or who
        faced additional restrictions to receive benefits as a result of their
        health or employment status, at the time they were sold Payment
        Protection by CHASE or at any time they paid for Payment
        Protection;

(d)     a refund to consumers who were otherwise not eligible for
        Payment Protection benefits at any time they paid for Payment
        Protection; and/or

(e)     a refund of all amounts CHASE assessed for Payment Protection
        that were in excess of sums which would have been permissible
        had CHASE correctly identified the service as insurance.

92.     Further, Plaintiff seeks injunctive relief enjoining CHASE from

continuing to engage in the deceptive, unlawful, and unfair common scheme described in

this Complaint.

## COUNT FIVE
## UNJUST ENRICHMENT

93.     Plaintiff restates and re-alleges the preceding paragraphs of this Complaint

as if set forth at length herein.

94.     In seeking to sell credit cards to Plaintiff and members of the Class,

CHASE withheld material terms from consumers prior to activation of Payment

Protection charges, including the express benefits, limitations, restrictions, and exclusions associated with the product.

95.     CHASE was unjustly enriched by charging Plaintiff and the Class sums for Payment Protection coverage that were in excess of amounts which would have been permissible had CHASE properly identified the service as an insurance product.

96.     CHASE was unjustly enriched by the practice of signing people up for Payment Protection who never agreed to be plan members.

97.     CHASE was unjustly enriched by the practice of withholding material terms of Payment Protection until after the product was charged to consumers' credit cards.

98.     CHASE was unjustly enriched by its business practice of making it so impermissibly difficult for consumers to actually receive coverage under Payment Protection that the service was virtually worthless. Such unconscionable acts include, but are not limited to:

> (a)     Denying claims over the phone without written explanation;
>
> (b)     Denying claims without sufficient investigation;
>
> (c)     Requiring claimants to submit excessive and duplicate documentation, and/or;
>
> (d)     Establishing a telephone number that does not allow for claimants to speak to a live person, a person in a timely manner, or a person that is properly trained to handle Payment Protection claims, in order for the subscriber to successfully file a claim.

99.     CHASE was unjustly enriched by charging Plaintiff and the Class members for illusory benefits.

100.    CHASE was unjustly enriched by charging Plaintiff and the Class members who were retired or were otherwise not eligible to receive payments by the terms of the Payment Protection plan.

101.    As a result of CHASE's actions which constitute unjust enrichment, Plaintiff and Class members suffered actual damages for which CHASE is liable. CHASE's liability for those damages should be measured by the extent of its unjust enrichment.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays:

a.      That the Court determines that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that he Plaintiff is a proper class representative, and that the best practicable notice of this action be given to members of the Class represented by the Plaintiff;

b.      That judgment be entered against CHASE and in favor of Plaintiff and the Class on the Causes of Action in this Complaint, for injunctive relief, and for actual, compensatory damages in an amount to be determined at trial;

c.      That judgment be entered imposing interest on damages, litigation costs, and attorneys' fees against CHASE;

d.      For all other and further relief as this Court may deem necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

October 21, 2010 Respectfully Submitted,

**ADEMI & O'REILLY LLP**

By: /S/ DAVID J. SYRIOS
Guri Ademi (SBN: 1021729)
Shpetim Ademi (SBN: 1026973)
David J. Syrios (SBN: 1045779)
3620 East Layton Ave.
Cudahy, Wisconsin 53110
Telephone: (866) 264-3995
Facsimile: (414) 482-8001
gademi@ademilaw.com
sademi@ademilaw.com
dsyrios@ademilaw.com

Allen Carney
Marcus Bozeman
Randall K. Pulliam
11311 Arcade Drive, Suite 200
Little Rock, Wisconsin 72212
**CARNEY WILLIAMS BATES
BOZEMAN & PULLIAM, PLLC**
Tel: (501) 312-8500
Fax: (501) 312-8505

**MILLER LAW LLC**
Marvin A. Miller
Lori A. Fanning
115 South LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone:    (312) 332-3400
Facsimile:    (312) 676-2676

*Counsel for Plaintiff and Proposed Class*